SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| J.G. JEWELRY PTE. LTD., JDM IMPORT CO. INC., MG WORLDWIDE LLC, MILES BERNARD, INC., and ASIA PACIFIC JEWELRY, L.L.C.<br><br>        Plaintiffs,<br><br>        v.<br><br>SHREE RAMKRISHNA EXPORTS PVT., LTD, THE JEWELRY COMPANY, and TJC JEWELRY, INC.,<br><br>        Defendants. | Index No. 651469/2018<br><br>Hon. Joel M. Cohen<br>IAS Part 3 |

**AFFIRMATION OF WENDY H. SCHWARTZ IN OPPOSITION TO ORDER TO SHOW CAUSE OF LIQUIDATORS OF PLAINTIFF J.G. JEWELRY PTE. LTD. SEEKING TO COMPEL PRODUCTION OF "CLIENT FILES," ORDER FINDING CONTEMPT, REASONABLE ATTORNEYS' FEES AND EXPENSES, AND OTHER RELIEF**

**WENDY H. SCHWARTZ**, an attorney duly admitted to practice law in the Courts of

the State of New York, hereby affirms the following under penalty of perjury, pursuant to

CPLR 2106:

1.      I am a member of the bar of the State of New York and a partner at the firm of

Binder & Schwartz LLP ("Binder & Schwartz"), counsel to Plaintiffs JDM Import Co., Inc., MG

Worldwide, LLC, Miles Bernard, Inc., and Asia Pacific Jewelry, L.L.C. (collectively, the "JDM

Entities").

2.      I submit this affirmation on behalf of the JDM Entities in opposition to the motion

of Tan Wei Cheong and Christina Khoo in their capacity as Joint and Several Liquidators

("Liquidators") for Plaintiff J.G. Jewelry Pte. Ltd. ("JGJ") seeking an order finding Binder &

Schwartz in contempt of this Court's September 17, 2025 Order; compelling Binder & Schwartz

FILED: NEW YORK COUNTY CLERK 02/02/2026 08:03 PM INDEX NO. 651469/2018
NYSCEF DOC. NO. 989 RECEIVED NYSCEF: 02/02/2026

26-22156-shl Doc 7-2 Filed 02/19/26 Entered 02/19/26 09:13:25 Exhibit
Schwartz Affirmation in Opposition to JGJs Liquidators Motio Pg 2 of 16

and Moses & Singer LLP ("Moses & Singer") to deliver certain documents and information to the Liquidators; awarding the Liquidators reasonable attorneys' fees and expenses; and for such other relief as is found just and warranted under the circumstances. *See* NYSCEF 980 (Order to Show Cause) ("OSC"); NYSCEF 970 (Liquidators' Mem. of Law in Supp. of OSC) ("Liquidators' Br.").

## I. The Joint Venture & J.G. Jewelry Pte. Ltd.

3. The JDM Entities allege that they entered into a joint venture (the "Joint Venture") in 2015 with Defendants Shree Ramkrishna Exports Pvt. Ltd. ("SRK"), The Jewelry Company ("TJCI"), and TJC Jewelry, Inc. ("TJCNY") (collectively, the "SRK Entities"). *See* NYSCEF 14 (First Am. Compl.) ¶ 30; NYSCEF 835 (Proposed Second Amended & Supplemental Complaint of JDM Entities) ("PSASC") ¶ 30.

4. On or about March 31, 2015, JGJ was incorporated in Singapore as a vehicle for the parties' collaboration and with an issue share capital of $100 comprising of 100 ordinary shares. NYSCEF 640 ("Singapore Appellate Decision") ¶ 16.

5. As all parties in this Action have long been aware, the JDM Entities do not assert that JGJ was the "corporate embodiment" of the Joint Venture. *See* NYSCEF 460 at 2 (Order denying Defendants' motion for partial summary judgment stating, "Plaintiffs assert that the joint venture preceded the creation of JGJ and submit evidence indicating that joint venture was announced to customers months before JGJ was incorporated. Further, Plaintiffs argue that while JGJ plays an important role in the alleged joint venture (including by serving as a means for the parties to account to each other for their joint activities), the venture itself is broader than JGJ.").

6. Michael Kriss and David Kriss (collectively, the "Kriss Brothers") were each issued 25 shares in JGJ and Shaileshkumar Khunt ("Shailesh") was issued 50 shares. Singapore

Appellate Decision ¶ 16.  The number of shares issued by JGJ has not changed since the time of its incorporation.  *Id.*  The Kriss Brothers are also the main owners of the JDM Entities.  *Id.* ¶ 1.

7.     The Kriss Brothers and Shailesh were appointed Directors of JGJ on April 15, 2015.  Singapore Appellate Decision ¶ 16.

8.     Shailesh was the nominee shareholder and director for the SRK Entities. Singapore Appellate Decision ¶ 202.

9.     A nominee resident director, Ng Chee Wooi Michael, was also appointed. Singapore Appellate Decision ¶ 16.  Pursuant to a Resident Director Indemnity Agreement, Mr. Ng was to act on the instructions of the Chief Financial Officer of JDM, as the "Authorized Person" designated by Shailesh and the Kriss Brothers.  *Id.*

10.     JGJ had no independent employees or business separate from those of the Joint Venture.  *See* Singapore Appellate Decision ¶¶ 16-17.

11.     The Joint Venture operated for two and a half years until, in August 2017, the SRK Entities unilaterally terminated the parties' relationship.  Singapore Appellate Decision ¶ 22.

12.     The SRK Entities thereafter took the position that the parties were never in a joint venture.  *Id.* ¶ 39-40.

13.     As a result, the management of JGJ was left with the Kriss Brothers.  *See* Singapore Appellate Decision ¶ 35.

**II.     The Singapore Action**

14.     On or around April 23, 2018, SRK brought a lawsuit in the General Division of the High Court of the Republic of Singapore (the "Singapore Trial Court"), alleging that JGJ owed SRK approximately $23 million for invoiced goods purchased and received by JGJ (the "23M Invoices").

3

FILED: NEW YORK COUNTY CLERK 02/02/2026 08:03 PM
INDEX NO. 651469/2018
NYSCEF DOC. NO. 989
RECEIVED NYSCEF: 02/02/2026

26-22156-shl   Doc 7-2   Filed 02/19/26   Entered 02/19/26 09:13:25   Exhibit
Schwartz Affirmation in Opposition to JGJs Liquidators Motio   Pg 4 of 16

15.    JGJ brought counterclaims, including against SRK, TJCI, and TJCNY.

16.    TJCI counterclaimed against JGJ, alleging that JGJ owed TJC approximately $2.2 million for invoiced goods purchased and received by JGJ (the "2.2M Invoices," and, collectively with the 23M Invoices, the "Invoices").

### III.    Singapore Trial Decision

17.    On or about January 18, 2024, the Singapore Trial Court issued a decision in the Singapore Proceedings.  NYSCEF 488 ("Singapore Trial Decision").

18.    The Singapore Trial Court held that "the evidence overwhelmingly proves that the collaboration between the SRK Entities and the JDM Entities was based on the JV" and that the SRK Entities' contention that the collaboration was a "B[usiness] A[rrangement]" was a "concoction."  Singapore Trial Decision ¶ 63.

19.    Notwithstanding these findings, the Singapore Trial Court held that JGJ could not enforce the Joint Venture agreement because JGJ appeared to lack standing and did not establish certain material terms.  Singapore Trial Decision ¶¶ 172, 193.  The court found the invoices were unenforceable but permitted the SRK Entities' unjust enrichment claims against JGJ.  Id. ¶¶ 204, 208.

20.    The Singapore Trial Court also held that Shailesh was SRK's nominee shareholder and director in JGJ.  Singapore Trial Decision ¶ 251.

### IV.    Singapore Appellate Decision

21.    On or about March 7, 2025, the Appellate Division of the Singapore High Court (the "Singapore Appellate Division") issued a judgment in the Singapore Proceedings.  Singapore Appellate Decision.

22.    The Singapore Appellate Division held, among other things, that there was "some sort of JV between the parties and that they *had* entered into a [Joint Venture agreement]."

Singapore Appellate Decision ¶ 86.  Nonetheless, the Singapore Appellate Division further held that JGJ was not party to the Joint Venture and was liable to pay the invoiced goods at the prices set forth in the invoices.  *Id.* ¶¶ 144, 159.

23.    The Singapore Appellate Decision affirmed the Singapore Trial Court's holding that Shailesh was SRK's nominee director and shareholder in JGJ.  Singapore Appellate Decision ¶ 202.

24.    The Singapore Appellate Decision observed that "[i]t was neither SRK's case nor JGJ's case that JDM [was] liable for the [invoiced] [g]oods."  Singapore Appellate Decision ¶ 137.

25.    The Singapore Appellate Decision further observed that Shailesh's actions as SRK's nominee director and shareholder in JGJ "took into account the interests of the SRK Entities," just as it was "likewise clear that the Kriss Brothers were similarly acting in the interests of the JDM Entities.  JGJ's counterclaim must therefore be considered in the light of the breakdown of the JV between the parties and the inevitable consequence that the parties were looking to advance or protect their own interests in the ensuing aftermath."  Singapore Appellate Decision ¶ 234.

**V.    The New York Action**

26.    On March 27, 2018, the JDM Entities and JGJ filed the Complaint in the above-referenced action (the "Action" or the "Litigation"), asserting claims against the SRK Entities.  NYSCEF 1 (Summons & Compl.).

27.    The JDM Entities and JGJ filed an Amended Complaint on June 29, 2018.  NYSCEF 14.

28.    When the Action was initiated, the JDM Entities and JGJ shared the objective of securing amounts due from SRK and TJCI.

5

29.     On April 29, 2025, in light of the Singapore Appellate Decision the JDM Entities and JGJ filed a motion seeking voluntary discontinuance of JGJ's claims and for leave for the JDM Entities to file and serve a Second Amended and Supplemental Complaint.  NYSCEF 647 ("April 29 Motion").

30.     The April 29 Motion sought, among other things, to remove JGJ as a plaintiff in the Action to reflect the adjudication of JGJ's claims in Singapore.  *See* NYSCEF 648 at 7-11.[1]

31.     It was the Kriss Brothers' decision to seek to discontinue JGJ's claims in the Action based on the Singapore Appellate Decision.

32.     JGJ has never asserted a claim against the JDM Entities in the Action nor, to my knowledge, in any other forum.

33.     The JDM Entities have not "asserted claims directly against JGJ" in any forum, as the Liquidators incorrectly state.  NYSCEF 970 (Liquidators' Br.) at 2, 11, 18.

34.     The Kriss Brothers were responsible for decision-making on behalf of JGJ and of the JDM Entities in the Action.  Accordingly, the decision whether JGJ would assert any claims against the JDM Entities or any other party, or take any other actions, in the Action resided solely with the Kriss Brothers.

**VI.     Binder & Schwartz**

35.     The JDM Entities and JGJ were previously represented in the Action by Moses & Singer LLP ("Moses & Singer").  NYSCEF 1 (Summons & Compl.).

---

[1] As agreed among all parties by stipulation, the April 29 Motion was re-filed on September 26, 2025, in identical form to the April 29 Motion, except any requests for relief previously made by JGJ were excised.  NYSCEF 829, NYSCEF 844 (stipulation); NYSCEF 832 (re-filed Notice of Motion).

6

FILED: NEW YORK COUNTY CLERK 02/02/2026 08:03 PM
NYSCEF DOC. NO. 989
INDEX NO. 651469/2018
RECEIVED NYSCEF: 02/02/2026
26-22156-shl   Doc 7-2   Filed 02/19/26   Entered 02/19/26 09:13:25   Exhibit
Schwartz Affirmation in Opposition to JGJs Liquidators Motio   Pg 7 of 16

36.     On April 16, 2024, Binder & Schwartz was retained by the JDM Entities pursuant to an engagement letter (the "Engagement Letter").  Pursuant to the Engagement Letter, only the JDM Entities were obligated to pay Binder & Schwartz's fees and expenses.  However, the Engagement Letter provided that Binder & Schwartz would also represent JGJ pursuant to the terms of the Common Interest and Confidentiality Agreement (the "Agreement") between the JDM Entities and JGJ.  Binder & Schwartz's fees have been paid by the JDM Entities and not by JGJ.

37.     On April 17, 2024, Binder & Schwartz appeared in the Action on behalf of JGJ and the JDM Entities.  NYSCEF 491, 492.

38.     On or about April 16-17, 2024, JGJ and the JDM Entities entered into the Agreement.  A copy of the Agreement is attached hereto as Exhibit 1.

39.     The Agreement provides, among other things, that:

a.  Binder & Schwartz would replace Moses & Singer and represent the JDM Entities and JGJ collectively in prosecuting claims and defending against counterclaims in the Litigation (Ex. 1 at 1);

b.  The JDM Entities and JGJ would, from time to time, share documents, factual materials, oral reports, mental impressions, memoranda, interviews of individuals, interview notes, interview reports, experts (consultative and testimonial), experts' conclusions or reports, litigation strategies, and other information (collectively, "Materials") (*id.*);

c.  "The legal fees and disbursements incurred in prosecuting the Parties' claims and defending against counterclaims in the Litigation shall be invoiced by Binder & Schwartz to, and paid by, the JDM Entities, who may apportion such fees and

FILED: NEW YORK COUNTY CLERK 02/02/2026 08:03 PM
INDEX NO. 651469/2018
NYSCEF DOC. NO. 989
RECEIVED NYSCEF: 02/02/2026

26-22156-shl    Doc 7-2    Filed 02/19/26    Entered 02/19/26 09:13:25    Exhibit
Schwartz Affirmation in Opposition to JGJs Liquidators Motio    Pg 8 of 16

disbursements among its entities and/or apportion/charge part of such fees and disbursements to J.G. Jewelry Pte Ltd., as appropriate." (Ex. 1 ¶ 1)

d. Materials were to remain confidential and subject to all applicable privileges (Ex. 1 ¶ 2);

e. In the event that the JDM Entities or JGJ determined that there was no longer a commonality of interest, JGJ would withdraw from the Agreement (Ex. 1 ¶ 11);

f. JGJ's withdrawal from the Agreement would not "affect or impair its obligations of confidentiality with respect to Materials previously furnished pursuant to [the] Agreement" (*id.*);

g. JGJ's withdrawal from the Agreement would not "affect or impair the ability of Binder & Schwartz to continue its representation of the JDM Entities" (*id.*);

h. Upon withdrawal from the Agreement, JGJ "shall promptly destroy all Materials received from the JDM Entities (and confirm, in writing, to the JDM Entities, that such destruction was done) or return such Materials to the JDM Entities, and shall continue to be bound by the obligations of confidentiality with respect to Materials previously furnished pursuant to this Agreement" (*id.*);

i. In the event that the Agreement was terminated, each party waived, among other things, "any potential conflict with . . . Binder & Schwartz continuing to represent the JDM Entities in the Litigation for which this Agreement was formed" (Ex. 1 ¶ 12). In such an instance, "nothing shall preclude Binder & Schwartz from representing any interest that may be construed to be adverse to JGJ; the present concurrent representation for the Litigation shall not be used as a basis for seeking to disqualify Binder & Schwartz from representing the JDM Entities or any one of

8

FILED: NEW YORK COUNTY CLERK 02/02/2026 08:03 PM
INDEX NO. 651469/2018
NYSCEF DOC. NO. 989
RECEIVED NYSCEF: 02/02/2026

26-22156-shl   Doc 7-2   Filed 02/19/26   Entered 02/19/26 09:13:25   Exhibit
Schwartz Affirmation in Opposition to JGJs Liquidators Motio   Pg 9 of 16

them in the Litigation or any other proceeding; and Binder & Schwartz shall not be disqualified from examining or cross-examining any JGJ witness" (*id.*); and

j.  Each of the JDM Entities and JGJ had the opportunity to consult with counsel regarding the Agreement (*id.*).

40.  Consistent with the Agreement, Binder & Schwartz kept no client file belonging to JGJ.

41.  Binder & Schwartz's client file belongs to the JDM Entities, and there are no segregable components of the file that belong to JGJ.

42.  There are no materials within the JDM Entities' client file that are not privileged and confidential information of the JDM Entities.

43.  All information concerning JGJ that is known to Binder & Schwartz originates either from documents that were produced in discovery in this Action or in the Singapore litigation, or from communications with the Kriss Brothers and with the JDM Entities' employees.

44.  Because the Kriss Brothers were both the JGJ directors responsible for the management of JGJ in litigation and the principals of the JDM Entities, there was no confidential information of JGJ.  In other words, all information known to JGJ was also known by the JDM Entities.

45.  Documents that were created by JGJ pre-litigation, including accounting records and communications between and among employees of the SRK Entities and the JDM Entities, have been produced in discovery in the Action.

46.  From the date of the Agreement until JGJ's withdrawal from the Agreement, *see* ¶ 52 below, JGJ's and the JDM Entities' interests were aligned: both parties sought to recover

9

from the SRK Entities amounts that the SRK Entities improperly retained when they walked

away from the Joint Venture, and to jointly defend against counterclaims brought by the SRK

Entities.

**VII.    Liquidation, Appearance of New Counsel for JGJ and Subsequent Events**

47.    On June 16, 2025, the High Court of the Republic of Singapore granted an

application for a winding up order against JGJ and appointed the Liquidators.  NYSCEF 783.

48.    The Liquidators were never a client of Binder & Schwartz.

49.    The Liquidators were never employees of or otherwise managing or working for

JGJ prior to their appointment as JGJ's liquidators.

50.    On June 17, 2025, the Liquidators sent correspondence directing Binder &

Schwartz to "refrain from any further actions in relation to the proceedings unless you have our

instructions."  NYSCEF 784.

51.    On June 23, 2025, the Liquidators advised Binder & Schwartz that the Liquidators

would be obtaining their own counsel to represent JGJ in this action.

52.    JGJ was thus withdrawn from the Agreement.

53.    On June 23, 2025, Binder & Schwartz filed a motion to withdraw as counsel for

JGJ in the Action.  NYSCEF 779.  The motion was granted by Decision and Order of the Court

dated September 16, 2025.  NYSCEF 827.

54.    On July 24, 2025, new counsel from Foley & Lardner LLP ("Foley") appeared in

the Action for the Liquidators.  NYSCEF 815, 816, 817.

55.    On July 30, 2025, Binder & Schwartz provided to Foley copies of the following

documents in our possession: (i) the documents produced by Plaintiffs in the Action; (ii) written

discovery served by Plaintiffs in the Action; (iii) transcripts of the depositions taken by Plaintiffs

in the Action; (iv) transcripts of depositions of witnesses represented by Binder & Schwartz that

10

FILED: NEW YORK COUNTY CLERK 02/02/2026 08:03 PM          INDEX NO. 651469/2018
NYSCEF DOC. NO. 989          RECEIVED NYSCEF: 02/02/2026

26-22156-shl    Doc 7-2    Filed 02/19/26    Entered 02/19/26 09:13:25    Exhibit
Schwartz Affirmation in Opposition to JGJs Liquidators Motio    Pg 11 of 16

were taken by Defendants in the Action; (v) expert reports served by the JDM Entities in the Action; and (vi) discovery communications between Plaintiffs and Defendants in the Action.

56.     The Liquidators therefore have copies of the end-products generated during Binder & Schwartz's joint representation of JGJ and the JDM Entities.

57.     On August 11, 2025, Foley sent Binder & Schwartz a letter requesting that Binder & Schwartz "provide its JGJ client file" and withdraw as counsel for the JDM Entities, citing an alleged conflict of interest.  A copy of Foley's August 11, 2025 letter is attached hereto as Exhibit 2.

58.     On August 14, 2025, I responded to Foley's August 11, 2025 letter explaining that Binder & Schwartz is not conflicted from representing the JDM Entities in the Action, there is no "client file" of JGJ, and Foley is not entitled to any materials belonging to the JDM Entities.  A copy of my August 14, 2025 letter is attached hereto as Exhibit 3.

59.     On September 8, 2025, Foley asserted additional arguments in a joint letter to the Court—in a draft circulated to Binder & Schwartz approximately four and a half hours before the filing deadline—that Binder & Schwartz has an alleged conflict of interest and requesting that the Court "direct Binder & Schwartz to turn over the JGJ client file to the Liquidators or their counsel."  NYSCEF 825 at 2-5.

60.     On September 12, 2025, I filed a letter responding to Foley's assertions in the September 8, 2025 letter and explaining why their request should be denied.  NYSCEF 826.

61.     The September 16, 2025 Order granting our motion to withdraw as counsel for JGJ stated: "it is . . . ORDERED that Binder & Schwartz is to comply with its obligations under

11

Rule 1.16(d)[2] of the Rules of Professional Conduct, as applicable to the facts presented, to 'take steps, to the extent reasonably practicable, to avoid foreseeable prejudice to the rights of the clients, including giving reasonable notice to the clients, [. . .] delivering to the clients all papers and property to which the clients are entitled, promptly refunding any part of a fee paid in advance that has not been earned and complying with applicable laws and rules.'" NYSCEF 827 at 2 (alteration in original). The Court later confirmed that this Order "used the standard-form language that I use in all withdrawal motions, and it comes right out of the Rules." NYSCEF 896 (Oct. 14, 2025 Tr.) 65:15-17.

62.     On September 29, 2025, Foley filed another letter again requesting "that the Court order Binder to turn [over] the entirety of its file regarding its representation of JGJ." NYSCEF 839. Foley's letter incorrectly stated that "Plaintiffs' former counsel, Moses & Singer, turned over a client file for JGJ to [Binder & Schwartz] when [Binder & Schwartz] took over as counsel for Plaintiffs. *Id.* at 1. Foley's letter also misrepresented Moses & Singer's description to the Liquidators of the materials they provided us. We were advised by Moses & Singer that they informed the Liquidators that they gave their entire client file on this case to our firm—not that they had "a client file for JGJ." *Id.*

63.     On September 29, 2025, I filed a letter responding to Foley's letter from the same date and reiterating that Foley's request should be denied.

64.     On October 1, 2025, Alexandra P. Kolod of Moses & Singer emailed Katherine Catanese and others of Foley, stating: "I am writing in response to your email and letter of September 5, and to follow up on our phone conversation on September 25. Since then, I have

---

[2] In the 2025 version of the New York Rules of Professional Conduct, the quoted language appears in Rule 1.16(e).

spoken with other members of the team at Moses & Singer LLP ('Moses & Singer['']) and confirmed that, as with Binder & Schwartz LLP ('Binder'), my firm was retained by JDM Import Co., Inc., MG Worldwide LLC, Miles Bernard, Inc., and Asia Pacific Jewelry, LLC (collectively, the 'JDM Entities'), not [by] J.G. Jewelry Pte. Ltd. ('JGJ'). And, as such, Moses & Singer never had a client file for JGJ. Our client file belonged to the JDM Entities, and there are no segregable components of the file that belong to JGJ.  We are in agreement with all of the points made in Binder's Letters to the Court, dated September 12 and 29, 2025 [NYSCEF Doc. Nos. 826 and 842], which apply equally to Moses & Singer.  Moreover, I did not state, on our September 25 call, that Moses & Singer had 'turned over a client file for JGJ to Binder when Binder took over as counsel for Plaintiffs,' as you wrote in your September 29, 2025 Letter to the Court [NYSCEF Doc. No. 839].  I informed you that our firm turned over our entire file on the matter to Binder; there was never a file for JGJ."  A true and correct copy of this email is attached as Exhibit 4.

65.    On October 14, 2025, the Court held oral argument on a number of issues including Foley's serial letter requests regarding what they referred to as JGJ's client file.

66.    At the October 14, 2025 oral argument, Foley represented that it did not "have the benefit of the client file to best advise [its] client as to whether or not the Note of Issue can be filed and discovery has truly been concluded on all of the issues that they need discovery on." NYSCEF 896 (Oct. 14, 2025 Tr.) 79:25-80:4.

67.    At the October 14, 2025 oral argument, the Court stated that it was "very much not inclined to have new claims in this litigation, which will slow it down" and that Foley could "file whatever motion [it] want[ed] on this client-file thing by order to show cause with an

13

expedited briefing schedule, to try to resolve it in the next, you know, few weeks; and the Note of Issue date is 30 days from today." NYSCEF 896 (Oct. 14, 2025 Tr.) 81:19-23.

68.     Consistent with the deadline set at the October 14, 2025 proceeding, we filed the Note of Issue on November 13, 2025. NYSCEF 899.

69.     On December 17, 2025, I received an email from Heidi Sorvino of White and Williams LLP ("White and Williams") stating that her firm had been retained by the Liquidators, that "[w]e would appreciate any files you may have relating to this matter," and requesting a call. A true and correct copy of this email is attached as Exhibit 5.

70.     On December 19, 2025, Ms. Sorvino and Jeremiah Vandermark of White and Williams filed Notices of Appearance in the Action. NYSCEF 962, 963.

71.     On December 22, 2025, I spoke with Ms. Sorvino and explained that we had already shared with Foley any materials that are not privileged and that the Court had addressed Foley's request at the October 14, 2025 proceeding, directing her to the transcript of that proceeding.

72.     On December 22, 2025, White and Williams filed a Notice of Substitution of Counsel, substituting White and Williams as attorney of record for the Liquidators in place and instead of Foley. NYSCEF 964.

73.     Nearly one month later—and three months after the October 14, 2025 proceeding—on January 18, 2026, the Liquidators filed the instant motion.

14

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 30, 2026
New York, New York

/s/ Wendy H. Schwartz
Wendy H. Schwartz

15

26-22156-shl   Doc 7-2   Filed 02/19/26   Entered 02/19/26 09:13:25   Exhibit
Schwartz Affirmation in Opposition to JGJs Liquidators Motio   Pg 16 of 16

## WORD COUNT CERTIFICATION

Pursuant to Rule 17 of Section 202.70(g) of the Uniform Civil Rules for the Supreme

Court and the County Court, I hereby certify that the total number of words in this affirmation,

excluding the caption and signature block, is 3,819.  I further certify that this word count

complies with the word count limit set forth in Rule 17 of Section 202.70(g).

Dated: January 30, 2026                          /s/ Wendy H. Schwartz
       New York, New York                        Wendy H. Schwartz

16