**WHITE AND WILLIAMS LLP**
Heidi J. Sorvino, Esq.
James C. Vandermark, Esq.
Jeremiah J. Vandermark, Esq.
810 Seventh Avenue, Suite 500
New York, NY 10019
(212) 631-4417
sorvinoh@whiteandwilliams.com
vandermarkj@whiteandwilliams.com
vandermarkjj@whiteandwilliams.com

*Counsel for Mr. Wei Cheong Tan and Ms.*
*Christina Khoo in Their Capacity as Joint*
*and Several Liquidators for Debtor J.G.*
*Jewelry Pte. Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>J.G. JEWELRY PTE. LTD.,<br><br>      Debtor in Foreign Proceeding. | Chapter 15<br><br>Case No. 26-22156 (SHL) |

**REPLY OF FOREIGN REPRESENTATIVES TO THE JDM ENTITIES' OBJECTION TO RECOGNITION OF FOREIGN MAIN PROCEEDING FOR J.G. JEWELRY PTE. LTD. (IN LIQUIDATION) AND CERTAIN RELATED RELIEF**

Wei Cheong Tan and Christina Khoo (the "Foreign Representatives" or "Liquidators"), in their capacity as the joint and several liquidators and authorized foreign representatives of J.G. Jewelry Pte. Ltd. (in Liquidation) (the "Debtor"), submit this reply to the objection of the JDM Entities [ECF No. 24] (the "Objection") to the *Motion of Foreign Representatives for an Order for Recognition of Foreign Main Proceedings for J.G. Jewelry Pte. Ltd. (In Liquidation) and Certain Related Relief* [ECF No. 3] (the "Motion").[1]

---

[1] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Motion or the Supplemental Declaration (as defined below).

51618105v.2

**PRELIMINARY STATEMENT**

1.    The only objection to the Motion and recognition of the Debtor's Singapore liquidation proceedings (the "Foreign Proceedings") was filed by the JDM Entities.  Their claims are largely unsupported, lack merit, and are irrelevant to the narrow issue currently before this Court – recognition of the Foreign Proceedings.  This includes their claim that they have standing to object to the Motion.  The JDM Entities' only interest in the proceedings before this Court are concerns with potential claims that the Liquidators may bring against them.  This is insufficient to establish they are a party-in-interest and thus, they do not have standing to oppose recognition of the Foreign Proceedings.

2.    Even if the JDM Entities have standing, their primary objection -- that the Foreign Proceedings are not foreign "main" proceedings – is again without merit.  They assert that Singapore is not the center of the Debtor's main interest ("COMI") based solely on their version of the history of the Debtor, which is disputed and largely predates the Foreign Proceedings.  This is incorrect because courts look at matters as of the chapter 15 filing, not prior periods.  It is also a surprising position for the JDM Entities to take because it is counter to prior statements made by the principals of the JDM Entities to the Singapore Court (perhaps the reason why the Objection was not supported by declarations or affidavits).  Accordingly, they have failed to rebut the presumption of Debtor's COMI being in Singapore, the country where Debtor is registered.

3.    In contrast to the unsupported positions of the JDM Entities, the Liquidators have provided the Court with several declarations describing their duties and the ongoing actions in the Singapore Proceedings pursuant to Orders of the Singapore Court.  It is undisputed that as of the Petition Date, the Debtor no longer had significant ongoing operations outside of Singapore.  In contrast, the Liquidators are continuing to take substantial, material actions in Singapore to effect the liquidation of the Debtor and  third parties and creditors would anticipate the Debtor's COMI

-2-

being in Singapore because, *inter alia*, (a) the founders and directors formed the Debtor in Singapore; (b) the Debtor's registered address was always in Singapore; (c) the Debtor's primary creditors initiated the Foreign Proceedings in Singapore and support a Singapore COMI, and (d) the Liquidators have advertised and provided ample notice of the winding up of the Debtor in Singapore.  Thus, the COMI factors often considered by courts overwhelmingly weigh in favor of recognition.

4.      Finally, the JDM Entities' arguments that the chapter 15 petition was filed in bad faith based on speculations on what may occur with claims that the Liquidators bring against them and pending state court litigation is premature and irrelevant in considering whether to recognize the Singapore proceedings under chapter 15.  Significantly, the JDM Entities do not assert the Singapore proceedings were commenced in bad faith.  Moreover, the recognition of the Foreign Proceedings would advance the policies of comity, international cooperation and the fair and efficient administration of cross-border insolvencies.  As the Liquidators have satisfied the requirement under section 1517(a), and no party raised a public policy exception under section 1516, the Court should grant the Debtor's Motion for Recognition of Foreign Proceedings and overrule the JDM Entities' Objection.

## ADDITIONAL BACKGROUND

5.      Additional facts supporting the center of Debtor's main interest being located in Singapore are being provided in the *Supplemental Joint Declaration of Mr. Wei Cheong Tan and Ms. Christina Khoo, Debtor's Foreign Representatives, in Response to JDM Entities' Objection to Recognition of Foreign Proceeding* ("Supplemental Declaration") being filed concurrently herewith.

-3-

51618105v.2

## ARGUMENT

### I.   JDM ENTITIES LACK STANDING TO OBJECT TO RECOGNITION OF FOREIGN PROCEEDINGS

6.      The JDM Entities failed to carry their burden to establish they are a party-in-interest and thus lack standing to object to recognition of the Foreign Proceedings.  *See Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (Because standing is jurisdictional, "it is the burden of the party who seeks the exercise of jurisdiction in his favor, . . . to [clearly] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.").

7.      The Bankruptcy Rules provides that "a debtor or a party in interest may contest a Chapter 15 petition for recognition of a foreign proceeding." Fed. R. Bankr. P. 1012(a).  The term "party in interest" is not defined in the Bankruptcy Code or Bankruptcy Rules, so "courts must determine on a case-by-case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation."  *See In re Zhejiang Topoint Photovoltaic Co.*, 2015 Bankr. LEXIS 1636, at 9-11 (Bankr. D. N.J. May 12, 2015) (applying the "party in interest" standard under § 1109(b) of the Bankruptcy Code in a Chapter 15 proceeding). While parties in interest may include a number of persons, it is "'not intended to include literally every conceivable entity that may be involved in or affected by the [bankruptcy] proceedings."  *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 284 (2024); *see also In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849–50 (Bankr. S.D.N.Y. 1989) ("[I]t is important that a bankruptcy court is not too facile in granting applications for standing.").

8.      An entity that is not "sufficiently affected" by the proceeding is generally excluded from the definition of "party in interest." *Ionosphere Clubs, Inc.*, 101 B.R. at 849–50; *see also Nat'l Fire Ins. Co. of Hartford v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 393 F. App'x 467, 469 (9th Cir. 2010) (noting that courts "routinely deny standing to marginal parties

-4-

involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the bankruptcy court's order, are not directly affected by that order.") (internal citations and quotations omitted).  Even where a person may be a party in interest in the general case, they "may be precluded from participating in a particular matter for lack of standing if the party has no cognizable interest (whether directly or indirectly) in the outcome of the proceeding." *Greene Ave. Restoration Corp. v. Green Throop LLC (In re Greene Ave. Restoration II Corp.)*, 597 B.R. 202, 217 n.14 (Bankr. E.D.N.Y. 2019); *see also Schmidt v. Rechnitz (In re Black Elk Energy Offshore Operations, LLC)*, 114 F.4th 343, 351 (5th Cir. 2024) (holding that "[u]nder the person aggrieved test, only persons directly, adversely, and financially impacted by a bankruptcy order may appeal it, . . . and their standing must be connected to the *exact order* being appealed") (emphasis in original) (internal citations and quotations omitted).

9.      Concern over pending or potential litigation claims are insufficient to show one is a party in interest.  A determination is not based on whether the person is involved in, affected by, or strategically disadvantaged by related litigation.  *Ascentra*, 657 B.R. at 352.  Courts have repeatedly held that such litigation-driven concerns do not amount to a direct harm sufficient to confer standing. *See Wigley v. Wigley (In re Wigley)*, 886 F.3d 681, 685 (8th Cir. 2018) ("[A] bankruptcy order court allowing litigation to proceed against an adversary defendant does not make that defendant a party aggrieved."); *Atkinson v. Ernie Haire Ford, Inc. (In re Ernie Haire Ford, Inc.)*, 764 F.3d 1321, 1325-26 (11th Cir. 2014) ("[A]n order subjecting a party to litigation, or the risk thereof, causes only indirect harm to the asserted interest of avoiding liability."); *Moran v. LTV Steel Co. (In re LTV Steel Co.)*, 560 F.3d 449, 453 (6th Cir. 2009) ("[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the

-5-

51618105v.2

sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal.")

10.    Standing to challenge a recognition order depends on whether the order itself directly impacts the challenging party. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 242–43 (2d Cir. 2013).   In *Barnet*, the court rejected the appellant's reliance on the foreign representatives' stated intention to seek discovery, explaining that it is the relief actually directed by the bankruptcy court, not a litigant's future intentions, that gives rise to cognizable injury. *Id.*  Recognizing standing based on such potential future harm would undermine the settled limitation of bankruptcy standing to parties directly and adversely affected.  *Id.*

11.    *Ascentra* is the only decision cited by the JDM Entities in support of their asserted standing. *See* Obj., ¶ 1 (*citing In re Ascentra Holdings, Inc.*, 57 B.R. 339, 352 (Bankr. S.D.N.Y. 2013).  That reliance materially overreads *Ascentra*.  In *Ascentra*, standing turned on the narrow fact that the recognition order itself imposed a concrete restraint immobilizing assets the objector claimed to own, creating an immediate pecuniary injury traceable to the court's order.  *See id.* at 351–53.  Here, by contrast, the JDM Entities identify no comparable recognition-based relief operating against them, pointing instead to claims asserted by the Debtor against the JDM Entities for unpaid receivables and turn over of client files, none of which will be impacted by recognition. See Obj., ¶ 1.

12.    The JDM Entities have failed to establish they have any pecuniary interests that will be directly and adversely affected by entry of the Recognition Order.  Their only concerns are hypothetical, post-recognition actions that may impact ongoing state court litigation between the parties.  . These assertions are insufficient.

51618105v.2

13.     Since the JDM Entities' only basis for standing to object to recognition of the foreign proceedings is based on potential causes of action by the Liquidators, they have failed to establish they have a sufficient stake in whether this Court enters the Recognition Order.  They are not parties in interest within the meaning of Bankruptcy Rule 1012(a) and thus, their objection should be rejected for lack of standing.

## II.    THE SINGAPORE LIQUIDATION PROCEEDINGS ARE FOREIGN MAIN PROCEEDINGS

14.     While the JDM Entities provide a lengthy recitation of their version of their litigation with the SRK Entities, it is irrelevant to this Court's determination whether to recognize the Foreign Proceedings.  "[A]n order recognizing a foreign proceeding shall be entered if--(1) such foreign proceeding . . . is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a); *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132-33 (2d Cir. 2013). There is no dispute that the second and third requirements are met here.

15.     A foreign proceeding shall be recognized as a foreign main proceeding "if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b). The Court of Appeals further held that "a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed." *Morning Mist*, 714 F.3d at 137.

### A.  Presumption that Center of Debtor's Main Interest Is in Singapore.

16.     Section 1516(c) establishes a presumption that "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *Morning Mist*, 714 F.3d at 133, 137 ("Chapter 15 creates a rebuttable presumption that the country where a debtor has its registered office will be its COMI").

-7-

In order for an objecting party to overcome the presumption of the debtor's center of main interest ("COMI"), the party must present evidence supporting COMI in another jurisdiction. *See Fairfield Sentry*, 11 U.S. Dist. LEXIS 105770, at *22 (finding that the debtor's "cash and shareholders are not concentrated in any one location which makes the fact that they are not in the BVI not particularly compelling or relevant.").

17. The Debtor's registered address has always been in Singapore. *See* Foreign Rep. Sup. Decl., ECF No. 31, at ¶¶ 6, 18. Those directors made a conscious decision to establish the Debtor in Singapore and to subject it to Singapore law. Moreover, the JDM Entities make no effort to identify a specific jurisdiction outside of Singapore as an alternative COMI. Accordingly, the center of Debtor's main interest is presumed to be Singapore pursuant to section 1516(c) of the Bankruptcy Code.

### B. COMI Factors Weigh Heavily in Favor of Singapore.

18. Where COMI is contested, courts have focused on a broad range of factors, as follows:

> Various factors, singly or combined, could be relevant to such a determination: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*Morning Mist*, 714 F.3d at 137; *In re Culligan Ltd.*, No. 20-12192 (JLG), 2021 Bankr. LEXIS 1783, at *30 (Bankr. S.D.N.Y. July 2, 2021). The United States Court of Appeals for the Second Circuit (the "Court of Appeals") has held that "any relevant activities, including liquidation activities and administrative functions, may be considered in the COMI analysis." *Morning Mist*,

-8-

714 F.3d at 137. "COMI should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." *Id.* at 136, 138 (internal quotations omitted); *In re Olinda Star Ltd.*, 614 B.R. 28, 44 (Bankr. S.D.N.Y. 2020) ("the Court may also consider the expectations of creditors and third parties in determining COMI"). This principle "underscores the importance of factors that indicate regularity and ascertainability." *Id.* at 138. Accordingly, "where a debtor's activities for an extended period of time have been conducted only in connection with winding up a debtor's business, the activities of a debtor's liquidators are both relevant and important to the COMI determination." *In re Fairfield Sentry Ltd.*, 10 Civ. 7311 (GBD), 2011 U.S. Dist. LEXIS 105770, at *11 (S.D.N.Y. Sep. 15, 2011); *see also In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *38 ("the foreign proceeding is like a liquidation case under chapter 7 of the Bankruptcy Code. As such, in determining the Debtor's COMI, it is particularly appropriate to consider where the liquidation is being administered." (internal citation omitted)).

### i.    Location of the Debtor's Headquarters

19.    The Debtor's registered address was always in Singapore. *See* Foreign Rep. Sup. Decl., ECF No. 31, at ¶¶ 6, 18. Upon the commencement of the Foreign Proceedings in June 2025, the Liquidators changed the Debtor's registered address to their address in Singapore. The majority of Second Circuit case law provides that the headquarters of a shell company would arguably be the location of those who actually manage it. *See*, *e.g.*, *In re Fairfield Sentry Ltd.*, 2011 U.S. Dist. LEXIS 105770, at *10-13; *In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *36. At the time of the chapter 15 petition, the Liquidators had been managing the Debtor for months. The Liquidators, as well as the Deloitte staff and employees, are located in Singapore. Moreover, the Debtor ceased its operations nearly a decade ago.

51618105v.2

20.    Accordingly, this factor weighs in favor of finding Debtor's COMI in Singapore.

### ii.    Location of Debtor's Managers

21.    As of the entry of the Winding-Up Order and the appointment of the Liquidators, control of the Debtor vested with the Liquidators.  As of the filing of the chapter 15 petition, the Liquidators had been managing the Debtors for months.  The Liquidators are located in Singapore.

22.    The JDM Entities,  failing to limit their analysis to at or around the time of the filing of the chapter 15 petition, erroneously argue that none of the Debtor's directors are located in Singapore.  The locations of the Debtor's directors are irrelevant as their management of the Debtor predated the commencement of the Foreign Proceedings.  *See In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *32-33 (finding debtor's pre-liquidation proceedings operations irrelevant to the COMI analysis).

23.    Accordingly, this factor weighs in favor of finding Debtor's COMI in Singapore.

### iii.    Location of Debtor's Primary Liquid Assets

24.    The JDM Entities assert, without any evidentiary support, that the Debtor has no assets in Singapore.  This is simply not true.  The Debtor's primary liquid assets are in Singapore. The Debtor's liquidation account is maintained in Singapore by the Debtor's Official Receiver and currently has a balance of S$860,896.28.  On the other hand, the Debtor's U.S. bank account only contains US$4,431.87.

25.    Additionally, any claims that the Liquidators may bring against the JDM Entities are merely potential causes of action controlled by the Liquidators in  Singagpore.   At best, such claims are contingent and clearly disputed – they do not guarantee recovery and are of little import for purposes of determining COMI.  *See Fairfield Sentry*, 11 U.S. Dist. LEXIS 105770, at *23 (holding the debtor's COMI was in the country where the debtor's "liquid assets" were located

-10-

notwithstanding that "significant litigation over disputed and contingent claims is taking place in New York . . . The pendency of the New York litigation does not guarantee recovery of any assets in New York. When weighed against the overwhelming evidence as to the other COMI factors, the litigation in New York is of little import."); *In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *34-35 ("Those contingent and disputed litigation claims do not support grounds for finding a New York COMI."); *In re Manley Toys Ltd.*, 580 B.R. 632, 647 (Bankr. D.N.J. 2018) ("hard/realizable (i.e. cash) assets are located in Hong Kong").

26.     Accordingly, this factor weighs in favor of finding Debtor's COMI in Singapore.

### iv.     Location of Debtor's Primary Creditors

27.     SRK and TJCI are the Debtor's primary creditors.  Following years-long litigation in the Singapore Courts, the Appellate Division for the Singapore High Court entered the Appellate Judgement granting judgment in favor of SRK for $23 million plus interest and costs and judgment in favor of TJCI for $2.2 million plus interest and costs.  *See* Foreign Rep. Decl., ECF No. 4, Ex. C, Appellate Judgment, at ¶¶ 6, 173.  Notably, the Kriss Brothers, equity holders of JDM Entities, listed Singapore addresses for SRK, TJCI and nine other of Debtor's creditors on Schedule G of their Statement of Affairs submitted to the Liquidators.  *See* Foreign Rep. Supp. Decl., ECF No. 31, Ex. 2, Statement of Affairs, at Sched. G.  The Kriss Brothers also identify Wong Tan & Molly Lim LLC, Singapore counsel for the Kriss Brothers/Debtor, as a creditor on Schedule G for apparently significant unpaid attorneys' fees in connection with the prior Singapore litigation.

28.     Notwithstanding any locations for the SRK Entities and TJCI outside of Singapore, the SRK Entities were the creditors that commenced the Foreign Proceedings in Singapore and filed a statement of support of the Debtor's Motion.  *See* Statement of Support, [ECF No. 23].

29.     Accordingly, this factor weighs in favor of finding Debtor's COMI in Singapore.

### v.   Liquidation Proceedings

30.   The Debtor has not been operational for nearly a decade. All of Debtor's activities for an extended period of time have been conducted only in connection with the winding up of Debtor's business. As of the filing of the Chapter 15 Petition, the Debtor had been in Foreign Proceedings for nearly eight (8) months. The Liquidators have been directing and coordinating the Debtor's affairs since their appointment in June 2025. The Liquidators have taken material actions to effect the liquidation of the Debtor, including, *inter alia*: (i) marshalling the Debtor's assets (*see* Foreign Rep. Supp. Decl., ECF No. 31, at ¶¶ 21, 29-31); (ii) obtained copies of the Debtor's books and records (*see id.*, at ¶ 24); (iii) retained Singapore and New York professionals (*see id.*, at ¶ 25); (iv) sought and obtained creditor support and paid professionals (*see id.*, at ¶ 26); (v) analyzed the Debtor's books and records, the Parties' Business Arrangement, the litigation proceedings and the extensive discovery produced therein and conducted an investigation of the Debtor's claims and causes of action (*see id.*, at ¶ 27); (vi) issued demand letters based on cognizable claims against contract counterparties (*see id.*, at ¶ 28); (vii) sought client files and materials from prior counsel and auditors (*see id.*, at ¶ 29-30); (viii) negotiated and settled substantial claims of the Debtor's estate for the benefit of creditors (*see id.*, at ¶ 33); and (ix) convened meetings of creditors and established a Committee of Inspection (*see id.*, at ¶ 35).

31.   Unlike the cases relied upon by the JDM Entities, the Debtor in this case ceased operations nearly a decade ago. The Liquidators were appointed almost eight (8) months prior to the Chapter 15 petition and have conducted substantial material actions to further the Debtor's liquidation as of the petition date. *See Fairfield Sentry*, 11 U.S. Dist. LEXIS 105770, at *16 (distinguishing *Bear Sterns* on the basis that the liquidators in that case were appointed on the same day as the filing of the chapter 15 petition, stating: "where a debtor's activities for an

extended period of time have been conducted only in connection with winding up a debtor's business, the activities of a debtor's liquidators are both relevant and important to the COMI determination."); *In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *38 (As in *Fairfield Sentry*, here, the foreign proceeding is like a liquidation case under chapter 7 of the Bankruptcy Code. . . . As such, in determining the Debtor's COMI, it is particularly appropriate to consider where the liquidation is being administered."); *In re Mega Newco*, No. 24-12031 (MEW), 2025 Bankr. LEXIS 398, at *8 (Bankr. S.D.N.Y. Feb. 24, 2025) (considering debtor's restructuring activities in the U.K. for purposes of COMI, where "[t]hese restructuring activities apparently are the only activities in which [debtor] has ever engaged.").

32.     The JDM Entities reliance on *In re Creative Fin., Ltd.*, 543 B.R. 498 (Bankr. S.D.N.Y. 2016), is misplaced.  In *Creative Fin.*, the court found the debtor's principal purposefully limited funding to the BVI liquidator, such that the liquidator could not "pursue or investigate [claims of the debtor's estate], or even to ascertain the location and amount of the debtors' assets, much less liquidate them.  Lacking the funding to do any more than the statutory minimum . . . the Liquidator did nothing further.  He never did anything as basic as obtaining the Debtor's ledgers and journals.  Nor did he secure any bank records."  543 B.R. at 502.

33.     The circumstances of the Debtor's Foreign Proceedings could not be more different.  The Liquidators are well funded by their negotiation and collection of substantial settlement payments.  The Liquidators have, *inter alia*, conducted extensive investigations into the claims and causes of actions of the Debtor's estate, have sought the turnover of the Debtor's property, have issued demand letters and have prepared to commence litigation.  All as set forth at length in the Liquidators' supplemental declaration filed concurrently herewith.

34.     Accordingly, this factor weighs in favor of finding Debtor's COMI in Singapore.

-13-

51618105v.2

### vi. Expectations of Creditors and Third Parties

35. The Debtor's primary creditors initiated the Foreign Proceedings in Singapore in June 2025 and the appointment of the Liquidators in Singapore had been advertised. *See* Foreign Rep. Supp. Decl., ECF No. 31, at ¶¶ 15, 17, 20. The Liquidation proceedings had been taking place there for nearly eight (8) months leading up to the Chapter 15 Petition. Further, the Debtor's creditors also support a finding of COMI in Singapore. *See* Statement of Support, ECF No. 23. Accordingly, the expectations of creditors and third parties would also likely be that the Debtor's COMI is in Singapore. *See Fairfield Sentry*, 11 U.S. Dist. LEXIS 105770, at *21; *In re Olinda Star Ltd.*, 614 B.R. 28, 44 (Bankr. S.D.N.Y. 2020) ("Because their money is ultimately at stake, one generally should defer . . . to the creditors' acquiescence in or support of a proposed COMI . . . [for they] can . . . best determine how to maximize the efficiency of a . . . reorganization and, ultimately, the value of the debtor."); *see also In re Olinda Star Ltd.*, 614 B.R. 28, 44 (Bankr. S.D.N.Y. 2020) ("The Verified Petition was filed over a year after the BVI Proceeding began, and the appointment of JPLs had been advertised, putting those who had dealings with [the debtor] on notice to correspond with the JPLs. In addition, the Verified Petition provides that a majority of the 2024 Noteholders—[the debtor]'s only scheme creditor constituency—had expressly required [the debtor] to centralize its restructuring in the BVI.").

36. Importantly, the Debtor's directors deliberately elected to incorporate the Debtor in Singapore to maintain the company's registered office in Singapore and to conduct its affairs under Singapore's transparent, rule-of-law framework. When creditors and counterparties dealt with the Debtor, they did so with the knowledge that they were dealing with a Singapore company, subject to Singapore law.

37. Accordingly, this factor weighs in favor of finding Debtor's COMI in Singapore.

-14-

51618105v.2

### vii.   Applicable Law

38.   The Debtor was formed under the laws of Singapore, and its constitution, share structure, directors' duties, members' rights, and corporate governance are all governed by Singapore law – in particular, the Companies Act 1967.  The Debtor's Foreign Proceedings will be largely subject to the IRDA.  Thus, Singapore law is generally applicable to the Debtor and will be applicable with respect to any disputes arising with respect to the Foreign Proceedings.  *See In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *35-36 (finding Bermuda law would apply to liquidation of Bermuda debtor company, which was subject to Bermuda Companies Act and was being liquidated in Bermuda).

39.   Additionally, the sizable judgments obtained by the SRK Entities against the Debtor are judgments docketed in Singapore, by Singapore courts, having fully adjudicated the issues under Singapore law.  Singapore law will be predominately applied to any issues raised regarding the judgments' validity and enforceability.   Moreover, the Singapore law provides the duties of the Liquidators and controls the distribution of the Debtor's assets to creditors. Thus, this Court's recognition of the Foreign Proceedings as a "main" proceeding will promote the coherent and efficient resolution of all related matters and proceedings.

40.   Accordingly, this factor weighs in favor of finding Debtor's COMI in Singapore.

### viii.   All Seven Factors Weigh in Favor of Debtor's COMI in Singapore

41.   In conclusion, all seven factors courts consider in determining COMI weigh in favor of finding the Debtor's COMI in Singapore, with no factors weighing in favor of COMI in another jurisdiction. Accordingly, the Court should recognize the Foreign Proceeding as a foreign main proceeding and overrule the JDM Entities' Objection in its entirety.

-15-

## III.   JDM ENTITIES' REQUEST FOR DISMISSAL IS WITHOUT MERIT

### i.   Comity, International Cooperation and the Fair and Efficient Administration of Cross-Boarder Insolvencies.

42.   The JDM Entities have articulated no cognizable basis in law for the dismissal of Debtor's chapter 15 petition. The goal of Chapter 15 is to:

> "incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency," while promoting international cooperation, legal certainty, fair and efficient administration of cross-border insolvencies, protection and maximization of debtors' assets, and the rescue of financially troubled businesses.  11 U.S.C. § 1501(a).
>
> Chapter 15 is derived from the Model Law promulgated by the United Nations Commission on International Trade Law ("UNCITRAL"), and it instructs that "[i]n interpreting [Chapter 15], the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508.

*Morning Mist*, 714 F.3d at 132.

43.   The Liquidators are officers of the Singapore High Court, and all their powers are subject to the control and supervision of the court in accordance with Singapore's Insolvency, Restructuring and Dissolution Act 2018 ("IRDA").  *See* IRDA § 144(3) ("The exercise by the liquidator of the powers conferred by this section is subject to the control of the Court, and any creditor or contributory may apply to the Court with respect to any exercise or proposed exercise of any of those powers.").

44.   The Singapore High Court provides judicial oversight over, *inter alia*:   the appointment and supervision of the Liquidators as officers of the Singapore High Court; the power to grant or refuse the liquidators authority to exercise certain statutory powers (*see* IRDA § 144(1)); the ability of any creditor to apply to the Singapore High Court with respect to the exercise

-16-

51618105v.2

of the liquidators' powers (*see* IRDA § 144(3)); and ultimately the court's role in approving the final liquidation report and dissolution of the Debtor (*see* IRDA §§ 147–149).

45.     Hence, the Liquidators are neither the agents of the former shareholders or directors nor agents of individual creditors – they are independent fiduciaries, answerable to the Singapore High Court, and bound by statute to act in the interests of all creditors.

46.     Recognizing the Foreign Proceedings as a "main" proceeding is entirely consistent with the overarching purpose of Chapter 15, which is to promote international cooperation and to allow "one court to take the lead while other courts assist in administering the liquidation." *See* Kumar Decl., ECF No. 15, at ¶ 35 (quoting *Re Opti-Medix Ltd*, [2016] SGHC 108 at ¶ 17).

**ii.     JDM Entities Failed to Raise a Public Policy Exception Under Section 1516**

47.     The section 1516 public policy exception is the only exception to the mandatory, formulaic process of recognition of foreign proceedings under section 1517. *See In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *39-46.   The exception is very narrow, does not prohibit recognition even in situations where the debtor has engaged in bad faith, and is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States. *See Id.*, at 40-41; *In re Manley Toys Ltd.*, 580 B.R. at 650.

48.     Courts have found that creditors funding liquidations are not manifestly contrary to public policy. *See, e.g.*, *In re Manley Toys Ltd.*, 580 B.R. at 651 (finding that liquidator's creditor support arrangement was not against public policy even where liquidator agreed not to use funds to prosecute claims against the funding creditor).   Creditor support agreements have been approved in Chapter 7 cases and are commonplace in Chapter 11 cases. *Id.*   Moreover, the JDM Entities' Objection is wholly dearth of any evidentiary support that the minor amount of funding provided to the Liquidators as of the commencement of the Foreign Proceedings in June 2025 has adversely affected the Liquidators' ability to perform their duties as independent officers of the court.

49.     Courts have also found that even where it is clear that the filing of a chapter 15 petition is a litigation tactic, the public policy exception will not apply. *See In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *45 (granting recognition of foreign proceeding, notwithstanding New York plaintiffs' objections that chapter 15 petition was a litigation tactic filed to stay the New York action in bath faith, as purportedly evidenced by the facts that the debtor was merely a nominal defendant that would not suffer damages if the plaintiffs prevailed in the action); *see also In re Ascot Fund Ltd.*, 603 B.R. at 283 (filed chapter 15 petition to stay preemptive lawsuit in New York). Nor is it sufficient to attempt to import caselaw from other chapters of the Bankruptcy Code. *In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *45. There is no similar good faith requirement in Chapter 15. *Id.* at 43.

50.     As discussed at length in the cases cited by the JDM Entities, *see, e.g., In re Creative Fin., Ltd.*, recognition is a "statutory mandate", determined solely on the requirements of section 1517, and the remedies for bad faith must be found in other sections of the Bankruptcy Code post-recognition, such as seeking relief from the automatic stay. 543 B.R. at 515, 522-23. The JDM Entities further cite to case law discussing bad faith in the context of manipulating COMI to try and conflate good faith standards applied under other chapters of the Code to apply to a motion for recognition. However, as discussed above, such good faith standards are simply not applicable to a chapter 15 filing. *See In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *45.

51.     In any event, the issue of the New York State Court Action is not presently before the Court. The subject of this motion is the recognition of the Foreign Proceedings. The question under section 1506 therefore is not whether the actions of the debtor violate public policy, but rather whether the foreign tribunal's procedures and safeguards do not comport with United States public policy. *See In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *45. No party has asserted in

51618105v.2

this action that the proceedings in Singapore themselves are, by their nature, contrary to United States public policy. *Id.* Moreover, the Kriss Brothers, through the Debtor, previously challenged the Foreign Proceedings arguing that the winding-up was sought for an ulterior purpose, namely, to influence the outcome of the US proceedings and was accordingly an abuse of process. However, the Singapore High Court rejected the Kriss Brothers objection determining that "[t]he defendant has sought to fend off the winding up by trying to bring in wider circumstances. None of these go to the justice and fairness of the winding up claim." *See* Foreign Rep. Sup. Decl., ECF No. 31, at ¶¶ 17. Now the Kriss Brothers are attempting to take a second bite of the apple here.

52.    Notwithstanding, even if there was a good faith standard in filing a chapter 15 petition, which there is not, the Liquidators have not acted in bad faith by filing the chapter 15 petition. The entire purpose of the bankruptcy stay in a chapter 15 case is to preclude parties from taking actions in the United States that may further deplete the dwindling assets of the debtor and frustrate the foreign liquidation. *See In re Ascot Fund Ltd.*, 603 B.R. at 285-86 (determining that a "New York lawsuit constitute[d] a collateral attack on a Cayman liquidation and the Cayman Court's jurisdiction, not the other way around, for the "sole" purpose of thwarting the liquidation in order to enhance its distribution from a limited pool of cash available to satisfy the claims of all Ascot Fund shareholders."). Here, the JDM Entities are intent on proceeding forward with the State Court Action without affording the Debtor the opportunity to present its claims on the same series of transactions and operative facts. If the State Court Action proceeds forward without the Debtor, the Debtor will be forced to bring its claims before another tribunal and the parties will be subject to duplicative litigation and a high probability of inconsistent, unfair results. Thus, it is entirely appropriate for the State Court Action to be stayed for a limited time in order a fair and efficient adjudication of all claims between the parties arising from the same series of transactions.

-19-

51618105v.2

### iii.     Courts Generally Recognize Foreign Proceedings of Shell / Letter Box Companies.

53.     The JDM Entities attempt to repackage their COMI argument asserting that Debtor's chapter 15 petition should be dismissed on the grounds that the Debtor is purportedly a "letter box" company that doesn't operate in Singapore.

54.     As discussed above, the center of the Debtor's main interest is clearly in Singapore. Dismissal is not warranted where the liquidators are taking material actions to wind-down the debtor, including investigating potential claims with the intent to pursue such claims if viable. *See*, *e.g.*, *In re Manley Toys Ltd.*, 580 B.R. at 651.  Here, the Liquidators have taken material actions to effect the liquidation of the Debtor, including, *inter alia*, investigating and pursuing claims.

55.     Moreover, bankruptcy courts have routinely recognized foreign proceedings of "shell", "letter box" and "holding" companies if they satisfy the requirements under section 1517(a) of the Bankruptcy Code. *See*, *e.g.*, *In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783, at *32 (recognizing foreign proceeding in Bermuda of holding company that had operated through a number of subsidiaries but had never had a place of business or conducted business in Bermuda); *In re Mega Newco*, No. 24-12031 (MEW), 2025 Bankr. LEXIS 398, at *8 (Bankr. S.D.N.Y. Feb. 24, 2025) (recognized foreign proceedings where debtor was created for the specific purpose of enabling the English Court to take jurisdiction over the proposed scheme of arrangement and the restructuring activities were the only activities in which the debtor had ever engaged.).

### CONCLUSION

**WHEREFORE**, the Liquidators respectfully request entry of the Proposed Order granting the relief requested in the Motion and overruling the JDM Entities' Objection in its entirety, and such other and further relief as the Court may deem just and proper.

51618105v.2

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By:   /s/ Heidi J. Sorvino
　　　Heidi J. Sorvino, Esq.
　　　James C. Vandermark, Esq.
　　　Jeremiah J. Vandermark, Esq.
　　　810 Seventh Avenue, Suite 500
　　　New York, NY 10019
　　　(212) 631-4417
　　　sorvinoh@whiteandwilliams.com
　　　vandermarkj@whiteandwilliams.com
　　　vandermarkjj@whiteandwilliams.com

　　　*Counsel for Mr. Wei Cheong Tan and Ms.*
　　　*Christina Khoo in Their Capacity as Joint*
　　　*and Several Liquidators for Debtor J.G.*
　　　*Jewelry Pte. Ltd.*

51618105v.2